1

2                    UNITED STATES DISTRICT COURT

3                        DISTRICT OF ARIZONA

4    United States of America,      )
                                    )
5              Plaintiff,           )  CR 17-0339-02-JAS(LCK)
                                    )
6          vs.                      )
                                    )  Tucson, Arizona
7    Francisco Ruelas-Pena,         )  October 30, 2017
                                    )  12:19 p.m.
8              Defendant.           )

9

10                   TRANSCRIPT OF PROCEEDINGS
11                    JURY TRIAL - DAY FIVE

12

13

14
                 BEFORE THE HONORABLE JAMES A. SOTO
15                 UNITED STATES DISTRICT JUDGE
                      405 W. CONGRESS STREET
16                    TUCSON, ARIZONA 85701

17

18

19

20             Cindy J. Shearman, RDR, CRR, CRC
               405 W. Congress Street, Suite 1500
21                    Tucson, AZ 85701
                      520-205-4286
22

23

           Proceedings Reported by Realtime Court Reporter
24         Transcript prepared by computer-aided transcription

25

1                          A P P E A R A N C E S

2      For the Plaintiff:

3      Rui Wang
       Rosaleen O'Gara
4      Assistant U.S. Attorneys
       United States Courthouse
5      405 W. Congress Street, Suite 4800
       Tucson, Arizona 85701

6

7      For the Defendant:

8      Frederick Michael Carrillo
       Carrillo Law Firm, PLLC
9      23 N. Stewart Avenue
       Tucson, Arizona 85716

10

11     Interpreters:

12     Juan Radillo

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2             (Call to order of court, 12:19 p.m.)
 3             THE COURT:  All right.  Let's go on the record in this
 4     case.  This is day five of the trial.  The record should
 5     reflect the presence of the defendant in the courtroom, he is
 6     being assisted by the court interpreter.  Counsel for both the
 7     government and the defendant are present in the courtroom also.
 8     The jury is not present; they are in the jury deliberation
 9     room.
10         Counsel, I did receive two questions from the jury.  You
11     should have received copies of those questions.  Ms. O'Gara or
12     Ms. Wang, do you have a copy of the questions?
13             MS. WANG:  We do, Your Honor.
14             THE COURT:  Mr. Carrillo, do you have a copy also?
15             MR. CARRILLO:  Yes, I do, Judge.
16             THE COURT:  All right.  I have proposed answers.
17     Tiffany, would you hand those to the attorneys?
18             CLERK:  Sure.
19             THE COURT:  And I think we should discuss that before
20     the answers go in to the jury.  All right.  Counsel, are we
21     ready?
22             MS. WANG:  Yes, Your Honor.
23             THE COURT:  All right.  Let's talk about question one.
24     This is a question that we see from time to time.  The question
25     is, for the record:  Is it possible to see a copy of the
```

1　transcript of the court hearing?

2　　I would propose that we give the following response to

3　that:  No, you must rely on your recollection of the testimony

4　of the witnesses at trial as well as the exhibits received into

5　evidence.

6　　What is the government's position with respect to the

7　answer -- proposed answer to the question?

8　　　　MS. WANG:  We have no objection to that.

9　　　　THE COURT:  Mr. Carrillo?

10　　　　MR. CARRILLO:  I don't object to the response to

11　question one.

12　　　　THE COURT:  All right.  Let's go to question two.  For

13　the record, the question is, it seems to be a series of them:

14　Does, quote, to transport, end of quote, mean you have to

15　physically take or lead persons to another destination?  Or is

16　transportation only vehicular?  A definition of to transport.

17　Please help with definition of to transport.

18　　I proposed -- we did -- we looked to see if there was a

19　model jury instruction on transport or to transport.  We did

20　not see one.  I did not see a definition of it within 8 USC

21　1324.

22　　What I would propose to do would be to respond to that

23　question with:  When a word or words are undefined within the

24　applicable law, you should give them the plain and ordinary

25　meaning.

1       What's the government's position?

2           MS. WANG:  Your Honor, our position is that we would

3   object to that -- to giving the jury that particular

4   instruction.  The reason being we do think that the answer is

5   contained in the statute itself.  If you look at

6   1324(a)(1)(A) --

7           THE COURT:  I forgot to bring my code section with me.

8   -- go ahead, I'm sorry.  While Tiffany is bringing the code

9   section, you think it's in the statute?

10          MS. WANG:  I do.  I think if you look at under little

11  two, which is what was charged in this case, it says -- I can

12  wait.

13          THE COURT:  So you're referring to

14  8 USC 1324(a)(1)(A)(ii)?

15          MS. WANG:  That's correct.  It actually defines it as

16  knowing or in reckless disregard of the fact that an alien has

17  come to, remained in the United States in violation of law,

18  transports or moves or attempts to transport or move such alien

19  within the United States.  And I would -- I would highlight by

20  means of transportation or otherwise.  So I think that that

21  actually answers the question is it only vehicular and I think

22  it also gives them more guidance as to what the transport means

23  and it's right there within the statute, by means of

24  transportation or otherwise.

25          So we would propose that the court give the answer to the

1   question -- to question number two, quote:  The transportation

2   or moving of the aliens may be by means of transportation or

3   otherwise.  And that's -- I think that's clear in the statute.

4          THE COURT:  Mr. Carrillo?

5          MR. CARRILLO:  Your Honor, I would object.  I would

6   object to amending the jury instructions at this time.  I would

7   -- I would ask that the court refer the jurors back to the

8   instruction and tell them to review -- to review their

9   instructions and to -- and to find guidance within the

10  instructions.  I don't think that amending or adding to the

11  instructions are appropriate at this time.

12         THE COURT:  So are you proposing I give them -- just

13  say you need to look at the instructions and that's it?

14         MR. CARRILLO:  Yes, Your Honor.

15         THE COURT:  What about my proposed answer given the

16  plain and ordinary meaning?  You object to that also, I assume?

17         MR. CARRILLO:  Your Honor, I think -- if I may have a

18  moment?

19         THE COURT:  Of course.  The government's position is

20  that it is defined within the applicable law.  I should not

21  give that instruction.

22      Go ahead, Mr. Carrillo.  You wanted a moment?

23         MR. CARRILLO:  Can I just --

24         THE COURT:  Sure.  Take your time.

25         MR. CARRILLO:  Your Honor, my preference at this time

1   would be to -- to instruct the jury to -- to consult with the

2   -- to consult the jury instructions.  I don't believe that,

3   number one, it is appropriate to modify the jury instructions.

4   I think that that is something that the parties should have

5   done -- I mean, I'm comfortable with the jury instructions as

6   the way they are.  I don't think it is appropriate to modify

7   any of the jury instructions during deliberation.

8       If the court is -- I guess, Your Honor, if the court is not

9   inclined to -- if the court is inclined to respond to this

10  question, I would -- I would ask that the court -- I would

11  prefer the court's response.

12          THE COURT:  Well, I haven't responded to the question.

13  The issue is how do I respond, we all agree on that?

14          MR. CARRILLO:  Well, rather than modify the jury

15  instruction, I would prefer the court's response.  I don't --

16          THE COURT:  Go ahead, Mr. Carrillo, and then I'll hear

17  from you, Ms. Wang.

18          MR. CARRILLO:  I guess the question is seeking a

19  definition.  I mean, the third question down, a definition of

20  to transport.  And I don't believe even 1324(a)(1)(A)(ii),

21  quote, by means of transportation or otherwise, is a response

22  -- is a definition of to transport.  I don't even think it

23  addresses or is it only vehicular because really vehicular is

24  never -- there's never any mention of vehicular in the entire

25  1324 statute or at least I'm not seeing one.  I don't see that

1  1324 refers to automotive transportation or otherwise.  And so,

2  based upon that, Your Honor, I would ask that the court

3  redirect the jury to the instructions that they've been given.

4          THE COURT:  Ms. Wang, go ahead.

5          MS. WANG:  Your Honor, to clarify, we're not asking

6  the court to modify the jury instructions but they have asked a

7  question that is directly answered and addressed in the very

8  statute that is charged and is at question in this case.  And I

9  think it certainly is the answer to the second question on that

10  page:  Is transportation only vehicular?  And it sounds like

11  Mr. Carrillo agrees that it does not have to be vehicular.

12      (A phone call was received from the jury deliberation

13  room.)

14          CLERK:  They were checking on us.

15          THE COURT:  Saying what's taking so long?  So that's

16  question No. 3?

17          CLERK:  They did not have any further questions, they

18  were just checking on us.

19          THE COURT:  All right.  Go ahead, Ms. Wang.

20          MS. WANG:  And so, we're not proposing that the court

21  look to any other statute, we're not asking the court to look

22  to case law, it's not a dictionary definition, it's clearly

23  stated in the actual statute that has been charged.

24          THE COURT:  But does it define what transportation is?

25          MS. WANG:  No, but it answers --

1          THE COURT:  It gives you an option.  It says:  By

2    transportation -- a means of transportation or otherwise.

3          MS. WANG:  It clarifies -- it's clear it clarifies

4    that it's not only vehicular and, you know, I think that the

5    court can craft an answer that states that it can be by means

6    of transportation or otherwise, and I think it's really

7    important that the jury have the benefit of that portion of the

8    statute which is directly what was charged in this case and it

9    answers -- I mean, I can't speak for them that it answers their

10   question but it gives them -- it gives the legal definition

11   that's given in the statute.  It's by means of transportation

12   or otherwise.

13         THE COURT:  Well, if I were to give that, I would want

14   -- I would want to basically give them the whole section and

15   then have them sort that out, the code section that the -- I

16   would not highlight just "by transportation or otherwise", I

17   would give them the whole code section, except I would -- well,

18   I guess I would include, "in furtherance of such violation of

19   the law" because that doesn't indicate what the penalty is.

20         MS. WANG:  Right.

21         THE COURT:  So I would basically give them, going back

22   up to 1321(a)(1)(A), any person who, and then we would jump

23   right down to (ii) knowingly, et cetera.  That's the section

24   that the -- as I understand it that the defendant is charged

25   with; am I correct?

1    MS. WANG:  Yes, Your Honor.  We would -- we would not

2  object to that.  We'd concur with that, giving the entire

3  section.  And we would add that -- we would especially ask for

4  that because the jury doesn't get a copy of the indictment as

5  it's charged during its deliberation and so, you know, they --

6  it's important and helpful for them to have the entire language

7  of the section that was actually charged.

8    THE COURT:  All right.  Mr. Carrillo, anything else?

9    MR. CARRILLO:  No.

10    THE COURT:  All right.  I'm going to -- what I'm going

11  to do is give the jury, in response to juror question number

12  two, a statement that essentially reads -- I'm not going to --

13  we're not going to give them the indictment but the indictment

14  reads, that charges the defendant with transportation of --

15  conspiracy to transport illegal aliens for profit and then I

16  would tell them that the -- to convict the defendant of

17  transportation -- let me back up here.

18  I would tell them that the defendant is charged with

19  conspiracy to transport illegal aliens and then I would quote

20  the section for 1324(a)(1)(A)(ii), but I would preface it with

21  "any person who".

22    MR. CARRILLO:  Your Honor, would you preface it saying

23  that that is the definition of transportation?  Because I want

24  it to be clear that that's not the definition for conspiracy.

25    THE COURT:  Well, the problem is the question that

1    they're asking goes beyond just the definition of

2    transportation.  It asks about is transportation only

3    vehicular.  And that's -- they seem to be -- they appear to be,

4    from that question, caught up on that issue when I look at the

5    first two parts of their question.  So what I would do is is

6    refer them to the jury instruction for the elements of the

7    offense and then add what the code section actually reads that

8    he's charged with, the code section that the defendant is

9    charged with.

10            MR. CARRILLO:  Right.  But I just don't want it to

11   appear that the -- to find the defendant guilty of conspiracy,

12   you must find that any person who knowingly, because that

13   overlooks the whole conspiracy aspect of the charge.

14            THE COURT:  Right.  So you want to address the

15   conspiracy part, right?  Well, and how would you propose that

16   we phrase that, Mr. Carrillo?

17            MR. CARRILLO:  Well, Your Honor, I mean, I guess --

18            THE COURT:  I mean, I understand your point.  We need

19   to clearly tell them he's charged, your client is charged with

20   conspiracy to transport illegal aliens.  In order to transport

21   illegal aliens, the statute reads boom and that would be it.

22   So that they --

23            MR. CARRILLO:  I mean, it almost seems that they must

24   first find him guilty of a conspiracy first and then move to

25   the transportation instruction.

1    THE COURT:  I think they have to do both.  I mean,

2  it's sort of -- they have to decide is there an agreement, is

3  there a conspiracy.  I mean, I think they have to do both.

4  You're proposing to say if you find there's a conspiracy --

5  that doesn't seem to work, so --

6    MR. CARRILLO:  I guess in light of -- in light of

7  this, Your Honor, that I would stand by my original

8  proposition.  It seems like the -- I really don't believe

9  providing them with the -- with the statutory language, number

10  one, is proper at this point in trial.  Number two, the entire

11  statute never refers to vehicular, and that's the -- that's

12  their question.  The entire -- the entire statute never

13  discusses a car, you know, a motor vehicle, or anything like

14  that.  There is no -- no discussion of vehicular in the

15  statute.  And I don't believe that the statute, that that

16  particular section of the statute, it says by means of

17  transportation or otherwise, if that's what the government is

18  suggesting that we throw in there, I -- I don't see how that is

19  going to shed any light on a definition of to transport.  By

20  means of transportation or otherwise, it's not a definition.  I

21  think it further confuses the jury.

22    I mean, if they're asking for a definition of to transport

23  and then you provide them with to transport means

24  transportation or otherwise, that's a nonresponsive answer to

25  the question.  And so -- and so providing, you know, providing

1   them with just one section of the entire charge, I don't
2   believe that that's appropriate.
3           THE COURT:  All right.  Ms. Wang, I'm looking at the
4   instruction that we gave them, specifically the fourth element.
5           MS. WANG:  Yes.
6           THE COURT:  Don't we already tell them, fourth, the
7   defendant or co-defendant knowingly transported or moved Ana
8   Maria, et cetera, the four of them, in order to help them
9   remain, don't we already answer that question?
10          MS. WANG:  We do, but we did not include the section
11  which is in -- which is in the statute which is by means of
12  transportation or otherwise.
13          THE COURT:  But isn't transportation or move, I mean,
14  isn't that the otherwise moving?  I guess the question is, does
15  that answer it?
16          MS. WANG:  No, it's -- the way the statute reads, it
17  says that the transportation or the movement can be by means of
18  transportation or otherwise and that -- that directly addresses
19  their question of whether or not it has to be vehicular.
20  Because the transportation or moved, the statute actually tells
21  you that it can be by means of transportation, which you can
22  define as vehicular, or otherwise.
23      So they don't have the benefit of that additional language
24  that is in the statute and it's, you know, it's not just one of
25  the statutes, it's the statute that is being charged here

1    that's part of the transportation of illegal aliens.  So it's

2    important that they have the benefit of that full section,

3    which is charged in the indictment.

4        I mean, I think the other option is the court can answer it

5    by saying:  Is transportation only vehicular?  The court can

6    just say:  No.  But I think that this way at least, you know, I

7    do -- I disagree.  I think it's -- I disagree that it's not

8    helpful and circular.  I think it's very much important for

9    them to have that definition because it talks about how the

10   transportation and movement can be done and it says by means of

11   transportation or otherwise.  And it's not -- it's not

12   duplicative.

13           THE COURT:  All right.  What I'm going to do is answer

14   question number two by providing the code section that applies.

15   If you want me to, Mr. Carrillo, I can add the conspiracy

16   portion of it, which is found a little bit later.  I'm not sure

17   that's necessary but I'm certainly willing to do that.

18           MR. CARRILLO:  Can I take -- may I take a look at the

19   response that you --

20           THE COURT:  Sure.  I mean, I haven't written it out

21   yet because I'm going to have to --

22           MS. O'GARA:  Your Honor, the government has no

23   objection to including that conspiracy section as well.

24           THE COURT:  I'm a slow writer so bear with me.  People

25   were listening when I went through this.  Did this come from

1  chambers?

2      CLERK:  That was from Casey.

3      THE COURT:  That's what I thought.  All right.  Why

4  don't you make some copies.  We'll have a lot of fun trying to

5  read my handwriting.  While Tiffany's doing that, what I

6  propose to do is to craft the answer to actually have that

7  code, Section 8 USC 1324(a)(1)(A)(ii), but also include the

8  conspiracy part which you were concerned about, and I would add

9  that after that where it says:  Engages in any conspiracy to

10  commit any of the preceding acts.  But I would preface that

11  with "a person who" so they know what we're talking about.

12  I'll show you in a minute, Mr. Carrillo and Ms. O'Gara and

13  Ms. Wang.

14      Mr. Carrillo, do you have a copy of the statute in front of

15  you?

16      MR. CARRILLO:  I'm sorry, Judge?

17      THE COURT:  Do you have a copy of the statute in front

18  of you?

19      MR. CARRILLO:  I do.

20      THE COURT:  You can borrow my book if you'd like.

21      MR. CARRILLO:  No, I do have it, Judge.

22      THE COURT:  Okay.  What's the government's position

23  with respect to my proposed answer, a copy of which was handed

24  to you?

25      MS. WANG:  Could we have just a minute?

1      THE COURT:  Sure.  I hope I copied the statute

2  correctly.

3      MS. WANG:  We have no objection.

4      MR. CARRILLO:  If I may have a minute?

5      THE COURT:  Sure.  Take your time.

6      MR. CARRILLO:  Your Honor, I guess my -- my concern

7  with this is that, really, the -- the -- our defense was mainly

8  focused on the conspiracy, that he was not guilty of

9  conspiracy.  And you can -- I don't mind saying the defendant

10  is charged with conspiracy to transport illegal aliens for

11  profit.

12      THE COURT:  I'm sorry.  That's not technically what

13  he's charged with, is he?

14      MS. WANG:  Well, he's charged with conspiracy to

15  transport illegal aliens, and then the interrogatory is whether

16  or not it's for profit.

17      THE COURT:  Correct.  And that's a good catch,

18  Mr. Carrillo.  I think in terms of my proposed answer, I had

19  intended -- I didn't catch it -- is just to put:  The defendant

20  is charged with conspiracy to transport illegal aliens.  Take

21  out the for profit part.  That's up to them per that

22  interrogatory.  At least I agree with you in part.  I think the

23  for profit part needs to come out in terms of this answer.

24    So, Tiffany, let's take that out.

25      CLERK:  Okay.

1          THE COURT:  But that doesn't address your concern.

2          MR. CARRILLO:  No, I guess my concern is, Judge -- may

3    I approach the podium?

4          THE COURT:  Sure.  I would -- the applicable --

5    applicable portion of -- portions, it's plural because there's

6    two portions of the statute that are listed below.

7          MR. CARRILLO:  Well, the -- I believe that -- that the

8    portion of the statute that addresses transportation of illegal

9    aliens is provided below.

10          THE COURT:  Correct.

11          MR. CARRILLO:  I don't believe that -- I don't believe

12    that -- and by then -- by providing this instruction below, any

13    person who engages in a conspiracy to commit any further

14    preceding acts, it's sort of contradictory or underscores the

15    conspiracy instruction.  So I am -- I do object to this answer

16    and, if anything, I would ask that the court amend the response

17    to read:  The defendant is charged with conspiracy to transport

18    illegal aliens.  The applicable portion of the transportation

19    -- of transportation of illegal aliens reads, and then provide

20    that portion.

21          THE COURT:  And not provide the portion on conspiracy?

22    I thought a few minutes ago you were concerned about that issue

23    and you wanted that included.

24          MR. CARRILLO:  Well, I am -- I am concerned about it.

25    However, by -- with the -- I don't -- I don't -- I object to

1   the way that this response reads because, really, this

2   response, in my -- I believe that it underscores and it

3   contradicts the conspiracy instruction.

4        THE COURT:  How does it contradict the conspiracy

5   instruction?  'Cause the conspiracy instruction is part of the

6   instructions that they have.  So how does it contradict it?

7        MR. CARRILLO:  Well, I mean, it's just kind of like --

8   I don't understand.  They're asking for a definition of to

9   transport.  And then any person who engages in any conspiracy

10  to commit any of the preceding acts is not a response to their

11  question.  In intertwining -- it's not responsive.  I think

12  that -- it's not responsive, Judge, and it's also very

13  confusing.  They're asking for a definition or asking for

14  clarification on transport, what it means to transport, whether

15  it be vehicular or not, you know, and then we're throwing in

16  language about conspiracy.

17       THE COURT:  So what are you proposing that I do?

18       MR. CARRILLO:  My initial proposal, Judge, is to

19  redirect them to the --

20       THE COURT:  Right, I understand that part.  But

21  assuming I'm not going to do that, I'm going to give them the

22  applicable code section, so if I give them that, are you asking

23  me to --

24       MR. CARRILLO:  You can -- my, I guess my -- my -- if

25  you're not going to redirect them to the instructions, my first

1    request would be that you give them your initial response.  My

2    second request would be that you say:  Transportation of

3    illegal aliens is defined by the applicable portion of the

4    statute, which reads, and then you can include just that one

5    paragraph.  That would be my second request.

6         THE COURT:  All right.  What's the government's

7    position?

8         MS. WANG:  Your Honor, our position is that, I mean,

9    this is what the statute reads.  I don't think it's misleading

10   at all.  I would propose that what the court can do is just say

11   the defendant is charged with conspiracy to transport illegal

12   aliens, period.  And then the applicable portions of this

13   statute with regard to transportation of illegal aliens reads,

14   and then just give that paragraph.  Any person who knowing or

15   in reckless disregard, and then take out the last sentence

16   because then it, you know, it makes it clear that he's being

17   charged with conspiracy but you're only defining -- it's only

18   the transportation for illegal aliens portion that's being

19   defined.

20        THE COURT:  So what is your proposed language?  The

21   applicable portion of --

22        MS. WANG:  Yes, so the defendant is charged with

23   conspiracy to transport illegal aliens, period.  The applicable

24   portions of the statute defining transportation of illegal

25   aliens reads, colon, and then that paragraph there.  And then

1     the court would take out the last sentence, which says:  Any

2     person who engages in any conspiracy to commit any of the

3     preceding acts.  Because then you've got the conspiracy sort of

4     first and then it's clear that you're only defining

5     transportation of illegal aliens.  That's what we would

6     propose.

7            THE COURT:  Your objection is noted as to -- you want

8     me to refer them just back to the jury instructions.  If not,

9     you want me to give them the instruction about the plain

10    meaning which I had previously written out.  Your objection is

11    noted to that.

12       Assuming I'm going to give them at a minimum the portion of

13    1324(a)(1)(A)(ii), then do you want me -- do you want me to

14    take the part out about conspiracy?  That's what I understand

15    you're asking me to do, correct?

16            MR. CARRILLO:  Yes.

17            THE COURT:  Okay.  And what I'm going to do, Tiffany,

18    I'll dictate it -- or you already have it.  It's going to read:

19    The defendant is charged with conspiracy to transport illegal

20    aliens, period.  Yeah, I'm going to take out, instead of

21    portions, I'm going to say portion, it should be singular, so

22    take that S out on portions, Tiffany.

23            CLERK:  Yep.

24            THE COURT:  All right.

25            MR. CARRILLO:  Is it going -- Your Honor, is the

1  response going to read the applicable portion of transportation

2  or transport?

3        THE COURT:  The applicable or applicable portion of

4  the statute defining transportation of illegal aliens reads,

5  colon, and then it will have the quote.

6     Anything else you want to put on the record?

7        MS. WANG:  No, Your Honor.

8        MR. CARRILLO:  Just my objections.

9        THE COURT:  Your objections are noted.  Okay.  Let's

10  see.  And let's make sure counsel has a copy of these.

11        CLERK:  Yep.

12        THE COURT:  Make sure that the jurors have a copy of

13  their questions also.  We need to keep the original.

14        CLERK:  Yep.

15        THE COURT:  Let's have the record reflect I'm signing

16  the answers to questions one and two.  Question one was not --

17  there was no objection by either party.  As to question two,

18  there's an objection by defense counsel to the answer as I'm

19  going to give it to them.

20     Anything else from counsel at this time?

21        MS. WANG:  No, Your Honor.

22        MR. CARRILLO:  No, Your Honor.

23        THE COURT:  All right.  We'll stand at recess.  Thank

24  you.

25     (A break was taken.)

1          THE COURT:  All right.  We're back on the record in

2     this case.  We'll have the record reflect the presence of the

3     defendant in the courtroom, he is being assisted by the court

4     interpreter.  Counsel for both the government and the defendant

5     are in the courtroom.  The jury is not present in the

6     courtroom.

7          Counsel, Tiffany has advised me that she was contacted by

8     the jury.  They have indicated to her that they are at an

9     impasse so I'd like to let you all know that and then hear from

10    respective counsel as to what you think we ought to do at this

11    point or what I ought to do.  Let me hear first from the

12    government.

13         MS. O'GARA:  Your Honor, I guess the government would

14    not have an objection to the court giving the jurors -- giving

15    the jury an Allen instruction at this point, assuming that

16    there's no indication at this point to the court of what the

17    breakdown is.

18         THE COURT:  I don't know what the numerical breakdown

19    is.

20         MS. O'GARA:  Then I guess that's our position.

21         THE COURT:  Mr. Carrillo?

22         MR. CARRILLO:  Your Honor, I really don't think an

23    Allen instruction is appropriate at this time.  In the

24    commentary, which the court knows which I'm sure the court has

25    read, the Allen instruction must be given with extraordinary

1   caution.  And given -- given the questions that were asked, the

2   jury -- and especially the first question, the jury, I don't

3   know what to make of that question about having a copy of the

4   transcript.  It leads me to believe that there is some

5   deliberations or some disagreement about the trial itself.

6       The -- we then sent in the other instruction basically with

7   the statute of transportation of an illegal alien and the jury

8   shortly thereafter gave notice to the court that they are

9   deadlocked.  I believe giving the Allen instruction would be --

10  would be overtly coercive on this jury.  They've been

11  deliberating now for -- well --

12          THE COURT:  About an hour on Friday I'd say.

13          MR. CARRILLO:  About an hour on Friday?

14          THE COURT:  Is that correct, Tiffany?  They arrived

15  here this morning at 9:30?

16          CLERK:  Yes.

17          MR. CARRILLO:  So four hours today, a little over four

18  hours today, and an hour over the weekend.  So with that, Your

19  Honor, I would object to the Allen instruction.

20          THE COURT:  All right.  Anything else from the

21  government?

22          MS. O'GARA:  No, Your Honor.  I think the only thing

23  is just if the court is inclined to give that instruction, that

24  we would ask for the neutral form of that instruction and the

25  standard Ninth Circuit jury instructions.

1          THE COURT:  I'm inclined to ask a couple of questions

2     first before I decide whether to give them the Allen charge or

3     not.  I would ask them simply whether or not they think

4     continuing to deliberate, if I give them some additional -- if

5     I give them some suggestions, which is really what the Allen

6     charge is, if they think that might help them arrive at a

7     decision.  So -- but obviously it should be noncoercive but

8     before I decide whether to give the Allen charge, I'm inclined

9     to ask them a few questions also prior to making that decision.

10          So, Tiffany, why don't we have the jury come in or brought

11     in.

12          (The jury entered the courtroom.)

13          THE COURT:  All right.  Ladies and gentlemen of the

14     jury, good afternoon.  We'll have the record reflect that the

15     jury is now present in the courtroom.

16          Who is the foreperson for this jury?  All right, ma'am,

17     juror number --

18          JUROR NO. 15:  15.

19          THE COURT:  It's my understanding, and don't tell me

20     what the vote is, but it's my understanding that the jury is at

21     an impasse in this case; is that correct?

22          JUROR NO. 15:  Yes, Your Honor.

23          THE COURT:  All right.  Let me ask some questions.

24     Have you -- have you had an opportunity to fully discuss all of

25     the testimony that was presented during the course of the

1  trial?

2        JUROR NO. 15:  Yes, we did.

3        THE COURT:  And have you had an opportunity to review

4  all of the evidence -- all of the evidence that was received

5  and admitted into evidence also?

6        JUROR NO. 15:  Yes, we did.

7        THE COURT:  Do you think that additional time

8  deliberating would be helpful to arrive at a verdict?

9        JUROR NO. 15:  No.

10        THE COURT:  All right.  If I had some suggestions for

11  you as to what you might want to consider and how you may want

12  to proceed, do you think that might help break the impasse?

13        JUROR NO. 15:  I don't think so.

14        THE COURT:  All right.  Is there anybody that

15  disagrees with the foreperson -- your foreperson's answers to

16  my questions?  If so, I'm going to ask you to raise your hand.

17  Anybody disagree?  It's my understanding that you all think

18  you've fully discussed this case, you've reviewed the

19  testimony, you've considered the exhibits that have been

20  received in evidence.  Is there anybody that disagrees?  Raise

21  your hand.

22     All right.  It's my understanding that you do not think

23  that additional time will help resolve the impasse that you're

24  at right now.  Is there anybody that disagrees?  If so, raise

25  your hand.

1      All right.  Sometimes there are some suggestions I give to

2  jurors and then I send them back to deliberate.  Is there

3  anybody that thinks that the suggestions might help break the

4  impasse?  All right.  You think there might be some suggestions

5  I can make that might resolve the impasse?  All right.  Jury

6  foreperson, you can take a seat, thank you.

7      All right, counsel, if you would approach.

8      (A sidebar conference was held.)

9          THE COURT:  All right.  Are there additional questions

10  you think I should ask the jury before I decide whether to give

11  the Allen charge or not, Ms. Wang or O'Gara?

12          MS. WANG:  (Counsel shook her head.)

13          THE COURT:  Mr. Carrillo?  I'll take that as a no.

14      Let's have the record reflect the attorneys were nodding

15  their heads sideways as an indication of no.

16      Mr. Carrillo?

17          MR. CARRILLO:  About additional -- I'm sorry.

18          THE COURT:  Are there any other questions you think I

19  should ask the jury before deciding whether to give the Allen

20  charge or not?

21          MR. CARRILLO:  No.

22          THE COURT:  All right.  What's your position now as to

23  whether the Allen charge should be given?

24          MS. WANG:  Our position is that three of the jurors

25  did indicate that --

1          THE COURT:  I counted four, I think, but go ahead.

2          MS. WANG:  Four of the jurors did believe that some

3    further instruction or suggestions would help.  And given that,

4    you know, I understand what the foreperson said but that's just

5    one juror and I don't think that particular juror has any

6    greater sway over the jury.  So given that there were three or

7    four that believed it would help, we would ask that the court

8    give the Allen charge.

9          THE COURT:  All right.  Mr. Carrillo?

10          MR. CARRILLO:  I mean, I don't believe that the Allen

11    instruction -- I believe that the Allen instruction at this

12    point is going to coerce this jury to reaching a verdict.

13          THE COURT:  Why do you think that?

14          MR. CARRILLO:  Because they've all said that they've

15    had -- well, I guess the foreperson indicated and there was

16    no -- when you addressed each juror, when you addressed the

17    jury as a whole, they seem to all indicate that they've had

18    enough time to consider and discuss the case, the exhibits, the

19    evidence, and really that's -- that's what the charge, that's

20    what this charge is.  And it's -- it is basically asking them

21    to go in and reach a decision when the court has already made

22    an inquiry about the length of their deliberations, about the

23    fact that they've reviewed the exhibits, they reviewed the --

24    they've discussed the evidence and the testimony, and they're

25    all deadlocked.  And when the court asked if any further

1    deliberations would be helpful, none of them shook their head

2    yes.

3              THE COURT:  All right.  I also -- that's true.  And

4    then I also asked them if they thought if I offered them some

5    suggestions if that would help break their impasse.  I think I

6    saw four hands raised.  So at least four jurors indicated that

7    perhaps some suggestions from the court, which would be in the

8    form of the Allen charge, they thought would be helpful.  So

9    I'm inclined to give the Allen charge.

10    I think the Allen charge or instruction that I give is the

11   model one and it's a neutral Allen charge and I will also tell

12   them, of course, that I'm not trying to force a verdict.  If

13   after they deliberate a little further after my suggestions

14   they haven't changed their opinion, that's fine and there's

15   nothing wrong, I will tell them.  Okay.

16    Anything else you want to put on the record, Mr. Carrillo?

17             MR. CARRILLO:  Nothing from the defense, Judge.

18             THE COURT:  All right.  Anything else, Ms. Wang?

19             MS. WANG:  No.

20    (The sidebar conference was concluded.)

21             THE COURT:  All right.  Jurors, I am certainly not

22   trying to force a verdict.  If you all are firm in your

23   beliefs, I certainly understand that and I respect that, too.

24    What I'm going to do, though, is give you some suggestions

25   and then I'm going to send you back to the jury deliberation

1  room at least for some amount of time to consider my

2  suggestions and see if that helps you resolve any differences

3  you have.  But I want to emphasize to you again, I'm not trying

4  to force a verdict.  You should not change your opinions about

5  the facts in this case just to reach a verdict.  But if after

6  you fully discuss the case again or you talk about the issues

7  where you disagree and some of you think your mind may be --

8  you have an honest belief and honestly change your mind, that

9  is okay also, that's permissible.

10  So here's the suggestions I have for you or instructions:

11  As jurors, you have a duty to discuss the case with one another

12  and to deliberate in an effort to reach a unanimous verdict if

13  each of you can do so without violating your individual

14  judgment and conscience.  Each of you must decide the case for

15  yourself but only after you consider the evidence impartially

16  with your fellow jurors.

17  During your deliberations, you should not hesitate to

18  reexamine your own views and change your opinion if you become

19  persuaded that it is wrong.  However, you should not change an

20  honest belief as to the weight or effect of the evidence solely

21  because of the opinions of your fellow jurors or for the mere

22  purpose of returning a verdict.  All of you are equally honest

23  and conscientious jurors who have heard the same evidence.  All

24  of you share an equal desire to arrive at a verdict.  Each of

25  you should ask yourself whether you should question the

1    correctness of your present position.

2        I want to remind you that in your deliberations you are to

3    consider the instructions I have given you as a whole.  You

4    should not single out any part of any instruction, including

5    this one, and ignore others.  They are all equally important.

6        So, again, with those suggestions, I'm going to ask you to

7    retire again to the jury deliberation room.  Again, I'm not

8    trying to force a verdict.  If you cannot agree, there's

9    nothing wrong with that.  But I will ask you to go back and

10   examine your opinions and, if necessary, review parts of the

11   testimony or parts of the evidence to see if any of you have an

12   honest change of mind as to the facts in this case.

13       So I'm going to ask you to go back to the jury deliberation

14   room at this time.  If you'd all rise, please.

15       (The jury exited the courtroom.)

16           THE COURT:  All right.  Thank you.  Please be seated.

17   We'll have the record reflect that the jury has returned to the

18   jury deliberation room for further deliberation.

19       Is there anything else either the government or the defense

20   counsel wants to put on the record at this time?

21           MS. WANG:  No, Your Honor.

22           THE COURT:  Mr. Carrillo?

23           MR. CARRILLO:  No, Your Honor.

24           THE COURT:  All right.  We'll stand at recess.  Thank

25   you.  Please be available.  I assume we're going to get some

1    sort of response from the jury soon.

2         MR. CARRILLO:  Your Honor, this can be on the record

3    or off the record.  Since my office is not downtown and

4    Mr. Ruelas-Pena does not live in the area, can we utilize the

5    room right here?

6         THE COURT:  Sure, yeah, that's fine.

7         MR. CARRILLO:  Okay.  Thank you, Judge.

8         THE COURT:  You mean the anteroom here?

9         MR. CARRILLO:  The little side rooms, the ones that

10   say attorney rooms.

11        THE COURT:  Sure, that's fine.

12        MS. WANG:  And I've got -- I need to leave at 2:30 for

13   a doctor's appointment.  And so is it okay if Ms. O'Gara is, if

14   only she is here to represent the government?  I just want to

15   let the court know.

16        THE COURT:  I'm okay with that if you all are okay

17   with that.  Mr. Carrillo, I assume you have no objection?

18        MR. CARRILLO:  I have no objection.

19        THE COURT:  All right.  That's not a problem.  We're

20   at recess.

21      (A break was taken.)

22        THE COURT:  All right.  We're back on the record again

23   in this case.  We'll have the record reflect the presence of

24   the defendant in the courtroom being assisted by the court

25   interpreter.  Counsel for the government, Ms. O'Gara, is

present in the courtroom, as is counsel for the defendant.  The

jury is not present in the courtroom.

Counsel, I've been advised by Tiffany that she was

contacted by the jury.  They have been unable to reach a

verdict.  I'm going to have them come in and I will ask them

some questions to confirm that that is the case.

Is there anything else you want me to ask the jury,

Ms. O'Gara?

MS. O'GARA:  No, Your Honor.

THE COURT:  Anything else you want to put on the

record at this time?

MS. O'GARA:  No, I don't think so.

THE COURT:  Mr. Carrillo, anything you want to put on

the record?

MR. CARRILLO:  No, Your Honor.

THE COURT:  All right.  What I will do, just --

assuming I'm told -- I'll ask the jurors a series of questions.

Assuming I'm told that they are at an impasse, then I intend to

declare a mistrial.  I intend to have the jury return to the

jury deliberation room to wait for me; I usually go in the jury

room to thank them personally.  I'm willing to ask them to see

if they are willing to stay and answer questions if counsel

want to talk to them about the case, about how you did or what

you did or didn't do that maybe you could do or not do better.

And my experience is sometimes jurors will stay and sometimes

1    they won't or sometimes some jurors stay and others do not.  I

2    will only do that if you both agree to do that and you both are

3    present.

4        Do you want to do that, counsel?

5            MS. O'GARA:  Yes, Your Honor.

6            MR. CARRILLO:  Yes, please.

7            THE COURT:  Okay.  All right.  Tiffany, if you'd bring

8    the jury in.

9        (The jury entered the courtroom.)

10           THE COURT:  All right.  Let me address the jury

11   foreperson.  I assume you're still the jury foreperson, ma'am?

12           JUROR NO. 15:  Yes, they didn't kill me yet.

13           THE COURT:  You have not been replaced.  I understand,

14   ma'am, that the jury is still at an impasse; is that correct?

15           JUROR NO. 15:  That's correct, Your Honor.

16           THE COURT:  Do you think additional time deliberating

17   would help resolve that impasse?

18           JUROR NO. 15:  No, Your Honor.

19           THE COURT:  Do you think there are any suggestions

20   that I may offer the jury to help resolve the impasse would be

21   helpful?

22           JUROR NO. 15:  No, Your Honor.

23           THE COURT:  All right.  Is there anybody that

24   disagrees with the responses or the answers given by your

25   foreperson?  If so, I'm going to ask you to raise your hand.

1  Anybody disagree with what she's told me?  All right.  Take a

2  seat, ma'am.

3      The court having discussed with the jury foreperson and

4  established that the jury is -- the jurors are at an impasse

5  and that no additional time deliberating will be helpful, I'm

6  going to declare a mistrial in this case.  In a minute I'll be

7  setting a status conference with counsel.

8      Jurors, I want to thank you on behalf of myself, on behalf

9  of my staff for your jury service.  I'm going to ask you,

10 though, to please return to the jury deliberation room one more

11 time.  I will be going in there -- my practice is is to go in

12 there and personally thank you for your service.  It just takes

13 a few minutes, you will not be here that long, but I will ask

14 you to return to the jury deliberation room right now.

15     And I also want to tell you that the admonition that I gave

16 you, that long admonition that I read you at the start of the

17 trial is now lifted, you are free to talk about the case if you

18 want to.  You are not required to talk about the case if you do

19 not want to but that admonition is now lifted.  Tiffany will

20 contact the alternate juror and let that juror know that the

21 admonition has also been lifted.  So if I can ask you one last

22 time to return to the jury deliberation room.

23     If you'd all rise, please.

24     (The jury exited the courtroom.)

25         THE COURT:  All right.  Thank you.  Please be seated.

UNITED STATES DISTRICT COURT

1    All right.  Let's have the record reflect that the jury is no

2    longer present in the courtroom; they have returned to the jury

3    deliberation room.

4        Counsel, what I'd like to do is set a status conference in

5    this case to set a new trial date in this case or perhaps there

6    will be some other nontrial disposition, but I'm going to set a

7    status conference, and I understand Tiffany's already discussed

8    a possible date with counsel.

9        Tell me the date and time, Tiffany.

10            CLERK:  November 14th any time in the morning is open.

11            THE COURT:  What day of the week is that, Tiffany?

12            CLERK:  That's a Tuesday.

13            THE COURT:  All right.  Does Tuesday, November 14th,

14   at 11:00 o'clock work for counsel?

15            MR. CARRILLO:  It certainly works better than

16   8:00 o'clock in the morning.

17            THE COURT:  I thought somebody would say something

18   like that.  All right.  I want to set this matter on my

19   calendar for a status hearing for Tuesday, November the 14th,

20   2017, at 11 a.m.

21       Mr. Rueles, the conditions of your release will remain the

22   same.  And I'm directing you two things, number one, you need

23   to be back in this courtroom on Tuesday, November the 14th,

24   2017, at 11 a.m. for a status conference.  And, secondly, I'm

25   directing you to stay in contact with your attorney.  If your

1   attorney needs to meet with you in person or to talk to you by

2   telephone, you need to be available to him.

3      Do you understand that, sir?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Do you have any questions of the court?

6        THE DEFENDANT:  No, Your Honor.

7        THE COURT:  Ms. O'Gara, anything else from the

8   government?

9        MS. O'GARA:  No, Your Honor.

10       THE COURT:  Mr. Carrillo, anything else from you?

11       MR. CARRILLO:  No, Your Honor.

12       THE COURT:  All right.  If you want to wait around, I

13   will talk to the jury and Tiffany will come in and let you know

14   whether all of them or any of them are willing to speak with

15   you and talk to you.  We are at recess.  Thank you.

16      (Whereupon, the matter was concluded at 3:01 p.m.)

17

18

19

20

21

22

23

24

25

```
1                      C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6      /s Cindy J. Shearman_____          December 7, 2017
       CINDY J. SHEARMAN, RDR, CRR              DATE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```